NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
J. MARK CHILDS (Cal. Bar No. 162684)
CHRISTOPHER C. KENDALL (Cal. Bar No. 274365)
MICHAEL G. FREEDMAN (Cal Bar No. 281279)
Assistant United States Attorneys
OCDETF Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2433/2576/0631
     Facsimile: (213) 894-0142
     E-mail:  mark.childs@usdoj.gov
              christopher.kendall@usdoj.gov
              michael.freedman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>JOSE RODRIGUEZ-LANDA, et al.,<br><br>          Defendants. | No. CR 13-484-CAS<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT LUIS VEGA'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF FBI SA TYLER CALL<br><br>Hearing Date: February 4, 2019<br>Hearing Time: 1:00 p.m.<br>Location:     Courtroom of the<br>              Hon. Christina A.<br>              Snyder |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mark Childs, Christopher C. Kendall, and Michael G. Freedman, hereby files its Opposition to Defendant Luis Vega's Motion in Limine to Exclude the Testimony of FBI SA Tyler Call (Dkt. 890).

This opposition and response is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 31, 2019        Respectfully submitted,

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
MICHAEL G. FREEDMAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Defendants are charged in count one of the indictment for their participation in a drug trafficking conspiracy wherein members of the Mexican Mafia, a prison gang that controls Hispanic street gang members inside and outside of U.S. prisons, agreed to form an alliance with members of an enormous drug cartel based in Michoacan, Mexico, the La Familia cartel. The terms of the alliance were simple. The La Familia cartel would provide the Mexican Mafia with cash and drugs in exchange for the Mexican Mafia's protection. La Familia wanted protection for its drug distributors who operated in the U.S. and for its members in prisons in the U.S. The alliance was about La Familia's cash and drugs in exchange for the Mexican Mafia's protection. This alliance was nicknamed "the Project".

When the Project began, defendant Luis Vega was a leader of the notorious street gang Mara Salvatrucha ("MS-13"). Defendant was brought into the Project because he was an MS-13 leader, and he leveraged MS-13 to further the Project, by using MS-13's power in Los Angeles and the U.S. to distribute drugs and by using MS-13's power in Central America to benefit the La Familia cartel. He arranged meetings of MS-13 members to brief them on the Project and repeatedly discussed the benefits of the Project to MS-13. His efforts leveraging MS-13 to further the Project paid off when he was made a member of the Mexican Mafia in June 2011. Even as a Mexican Mafia member, defendant continued relying on MS-13 to further the Project. Defendant's own words make plain the relevance of MS-13 to this case.

The charges against defendants are based, in part, on recorded in-person and telephone conversations involving defendants and

others. During these conversations, defendant discusses MS-13 countless times. Many of these discussions are in vague, ambiguous, elliptical and cryptic language. The government therefore intends to present testimony from an MS-13 expert, FBI SA Tyler Call, regarding MS-13 and Vega's discussions of MS-13. SA Call's experience investigating MS-13 qualifies him to provide this testimony, and the government properly noticed SA Call's qualifications and the opinions to which he will testify. The Court should deny defendant's motion for each of these reasons and should not hold an evidentiary hearing.

## II. STATEMENT OF FACTS

Defendants Manuel Jackson ("Jackson"), Jose Rodriguez-Landa ("Rodriguez-Landa"), Michael Moreno ("Moreno"), and Fred Montoya ("Montoya") are highly influential members of the Mexican Mafia, which wields enormous power in the criminal underworld. Defendant was a leader of MS-13. (See Dkt. 339) He leveraged MS-13 to further the Project and to become a member of the Mexican Mafia. Evidence of the Project will include, in part, consensually recorded and Title III wiretap calls and recorded meetings between defendants themselves and with representatives of the La Familia drug cartel. Defendant discusses MS-13 on many of those recordings, including identifying himself as the leader of MS-13; calling meetings of MS-13 members to discuss the Project; describing the benefits to MS-13 of the Project; discussing the benefits MS-13 can provide to the La Familia cartel; and discussing how he can use MS-13's national network to distribute drugs from the Project. The following are examples of defendant's discussion of MS-13 (all dates are 2011):

**Exhibit 325-3 (ES 52), April 1**: Defendant introduces himself as "I'm the one who runs MS"

2

**Exhibit 329-3 (ES 53), April 11**: Defendant describes telling La Familia about MS-13 in California and Central America; confirms he has stayed in communication with MS-13 members in Guatemala; and says "we got people all over" the United States

**Exhibits 337-4 (ES 56), April 21**: Defendant discusses coordinating MS-13 members in Central America, Virginia, and North Carolina to further the Project

**Exhibits 337-7 to 337-9 (ES 56), April 21**: Defendant says he has people in Atlanta and can move large amounts of drugs

**Exhibit 342-3 (ES 58), May 16**: Defendant and Montoya discuss the La Familia cartel's interest in MS-13

**Exhibits 357-2 to 357-5 (ES 62), June 13**: Defendant holds a meeting of MS-13 members to announce he has become a Mexican Mafia member and explain the Project.  Defendant refers to MS-13's reputation and tells the members to "make sure it's worth it."  He discusses MS-13's connections to Central America and the East Coast

**Exhibit 370-4 (ES 64), July 14**: Defendant holds another meeting of MS-13 and other gang members to announce he has become a Mexican Mafia member and explain the Project

**Exhibit 372-4 (ES-66), August 11**: Defendant discusses his capability to transport drugs to Oklahoma and Miami

**Exhibit 276, October 12**: Defendant speaks with an MS-13 driver to transport 45 pounds of marijuana from the La Familia cartel

**Exhibit 383-6 (ES 78), November 9**: Defendant discusses gang members he has in different parts of Los Angeles to distribute drugs

Additionally, the prison kites the government intends to introduce include references to defendant and MS-13. (See Dkts. 874, 906).

The government provided notice of SA Call's expert testimony on May 8, 2015 (Dkt. 890, Ex. A), and also produced two CVs of SA Call's, a general CV (Bates 43226-43227, attached hereto as Ex. 1) and a CV focused on SA Call's MS-13 experience (Bates 43228-43229, attached hereto as Ex. 2). As detailed in the CVs, SA Call has been an FBI agent since 2010 and has investigated MS-13 since 2010. SA Call has been the case agent on several prosecutions of MS-13; has worked on MS-13 investigations nationwide; has worked with El Salvadoran officials on MS-13; has briefed other law enforcement in Los Angeles and Washington, D.C. on MS-13; and has debriefed numerous current or former MS-13 members.

SA Call will testify regarding the following topics: (1) origins and existence of MS-13 in Los Angeles, the U.S., and globally; (2) symbols, signs and tattoos of MS-13; (3) association of MS-13 with the Mexican Mafia; (4) MS-13 members in jail being considered Sureños and association with the Mexican Mafia through the use of the number "13," i.e., "MS-13"; (5) MS-13 members' participation in the Sureños' control of illegal activities within jail and prison units and on the streets, including drug sales; and (6) the Sureños' requirement that only recognized Sureño gang members be permitted to control illegal activities in jail and prison units and on the streets on behalf of the Mexican Mafia.

**III. ARGUMENT**

  **A. SA Call Will Offer Expert Testimony Regarding MS-13**

Defendant suggests it is not clear if SA Call will be testifying as an expert. The 2015 notice specifically designates SA Call as an expert, and the government confirms that SA Call will be testifying solely as an expert. Defendant also takes issue with the notice as

4

to SA Call's drug expert testimony.  Although the notice is sufficient, the government now confirms that SA Call will only be testifying as an MS-13 expert, not a drug expert.[1]  Accordingly, the only disputed issues are as follows: 1) whether SA Call may testify as a gang expert; 2) the relevance of SA Call's MS-13 testimony; and 3) defendant's request for an evidentiary hearing.

### B. SA Call's Expert Testimony Is Admissible

#### 1. SA Call May Testify as an MS-13 Expert Based on His Law Enforcement Experience

An expert's opinions must convey "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or determine a fact in issue..."  Fed. R. Evid. 702.  The Court has broad discretion to determine whether to admit expert testimony. United States v. Gonzalez, 307 F.3d 906, 909 (9th Cir. 2002).

The Ninth Circuit has clearly held that an expert, and particularly a law enforcement officer, may base his opinions on the type of information "normally obtained in his day-to-day police activity." United States v. Hankey, 203 F.3d 1160, 1169-70 (9th Cir. 2000) ("this type of street intelligence might be misunderstood as either remote (some dating back to the late 1980's) or hearsay (based upon current communications...), but FRE 702 works well for this type of data gathered from years of experience and special knowledge").

---

[1] Other law enforcement witnesses will testify as to their lay opinion, or as both lay opinion witnesses and expert witnesses, as discussed in detail in the government's opposition to defendant Jackson's motion in limine to exclude expert opinion (Dkt. 889).

SA Call is well-qualified to testify regarding MS-13 based on his nearly a decade of experience investigating MS-13 in the U.S. and internationally, as well as training other law enforcement on MS-13.

### 2. Testimony from Gang Experts is Admissible

The Ninth Circuit has repeatedly held that testimony from gang experts is admissible expert testimony. See e.g. Hankey, 203 F.3d at 1166-67, 1169-70 (9th Cir. 2000)(police officer's expert testimony regarding gangs that was largely based on his training and experience was reliable and admissible); United States v. Padilla, 387 F.3d 1087, 1094 (9th Cir. 2004)(testimony regarding gang structure and organization is admissible); United States v. Vera, 770 F.3d 1232 (9th Cir. 2014) (expert testimony about gang structure and practices admissible); United States v. Zaragoza, 212 Fed. Appx. 658, 662 (9th Cir. 2006)(testimony regarding Mexican Mafia admissible); United States v. Rodriguez, 766 F.3d 970, 986 (9th Cir. 2014)(testimony regarding Mexican Mafia and relationship to subordinate Southern Hispanic criminal street gangs admissible).

SA Call's testimony on MS-13 is exactly the kind of gang expert testimony the Ninth Circuit has repeatedly upheld. The government's notice and SA Call's CV make clear that SA Call will testify regarding MS-13's organization and structure; its practices; and its relationship with the Mexican Mafia. Each of these topics has been has been deemed admissible by the Ninth Circuit.

### 3. The Government Properly Noticed SA Call's Opinions

Defendant challenges the notice of SA Call's expert opinions based on defendant's request for the precise opinions being offered, but this is not required under Rule 16. Rather, the expert notice "must describe the witness's opinions, the bases and reasons for

those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). Rule 16 does not require a detailed recitation of an expert's anticipated testimony; rather, the Ninth Circuit has held that Rule 16 requires only that a party provide "notice of the general nature" of the expert's testimony. United States v. Finley, 301 F.3d 1000, 1017 (9th Cir. 2002) (finding that Rule 16 was satisfied where party provided "basic information" regarding expert's proposed testimony); see also United States v. Toliver, 380 Fed. Appx. 570, 574 (9th Cir. 2010) (stating that the government's notice that gang experts "would testify on the basis of their investigations, training, and experience were sufficient to satisfy Federal Rule of Criminal Procedure 16(a)(1)(G)"). The notice of SA Call's opinions on MS-13 and the bases for these opinions is more than adequate under Rule 16, and nothing further is required.

**C.   The Confrontation Clause Is Not Implicated**

Nor is defendant correct when he suggests SA Call's testimony runs afoul of the Confrontation Clause. In United States v. Palacios, 677 F.3d 234, 242-43 (4th Cir. 2012), the Fourth Circuit upheld the admission of expert testimony and found that there was no Crawford violation because the expert

> did not specifically reference any of these interviews during his expert testimony, nor did he make any mention of [defendant] in particular. Rather, he used these interviews, along with the other sources of his extensive knowledge about MS-13, to form an independent opinion about the gang's history, operation, structure, practices, and symbols. Norris was available for cross-examination regarding this opinion.

Palacios, 677 F.3d at 243-244. Palacios distinguished United States v. Mejia, 545 F.3d 179 (2d Cir. 2008), on which defendant relies, "noting that [Mejia] turned upon the fact that the expert simply

7

passed along an important testimonial fact he learned from a particular interview, which did not require him to apply any independent expertise." Palacios, 677 F.3d at 244.  Thus, the expert testimony in Mejia was unlike the expert testimony here (and in Palacios), "in which the expert witness applied his expertise, derived over many years and from multiple sources to provide an independently formed opinion." Id. (internal citations and quotation marks omitted).  For these reasons, there are no Sixth Amendment issues implicated by SA Call's expert testimony.

### D. Testimony on MS-13 Is Relevant and Not Unduly Prejudicial

Defendant's argument that MS-13 is irrelevant is disproven by his own frequent references to MS-13 throughout the conspiracy, as detailed above.  Defendant's involvement in MS-13 is directly relevant to his inclusion in the Project and his conduct throughout the Project.  His frequent mentions of the gang make this abundantly clear and cannot be ignored at trial.  Defendant leveraged MS-13 and its structure to further the Project.  Defendant's role in MS-13 is as important to the conspiracy as his role in the Mexican Mafia.  Each is directly relevant. See United States v. Patterson, 819 F.2d 1495, 1507 (9th Cir. 1987) ("Expert testimony on the structure of criminal enterprises is allowed to help the jury understand the scheme and assess a defendant's involvement in it"); see also Hankey, 203 F.3d at 1173 (although gang testimony was "not proffered to prove a substantive element of a crime," it would aid the jury in understanding gang-related bias).

Nor is the topic of MS-13 unduly prejudicial.  Defendant's concerns about press coverage of MS-13 will be addressed during voir dire and with instructions to the jury not to conduct independent

8

research.  The jury will also be instructed to decide the case based only on the evidence, and that evidence is replete with defendant's involvement in and discussion of MS-13.  MS-13 is plainly relevant and the proper topic of expert testimony.

### E.   An Evidentiary Hearing Is Not Required

Defendant's requested evidentiary hearing is unnecessary.  Under Fed. R. Evid. 702, the Court must perform a "gatekeeping [function to] screen the proffered evidence to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  United States v. Alatorre, 222 F.3d 1098, 1101 (9th Cir. 2000), citing Daubert v. Merrell-Dow Pharms., Inc., 509 U.S. 579 (1993) (internal citations and quotations omitted).  With respect to expert testimony "the test of reliability is 'flexible' [and] the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination."  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141-42 (1999).  The Supreme Court does not require that a district court conduct a "formal Daubert hearing, or require [the expert] to give a precise description of each step in the logical chain he used to arrive at his conclusions."  United States v. Lopez-Martinez, 543 F.3d 509, 514 (9th Cir. 2008).

In the one Ninth Circuit case defendant cites, United States v. Freeman, 498 F.3d 893 (9th Cir. 2015), the Court determined most of the case agent's expert testimony to be admissible, including "interpretations of [] recorded conversations."  Id. at 906. Even with regard to the portions that the Freeman Court found to be harmless error, the Ninth Circuit did not suggest that a Daubert hearing should have been held.  There is simply nothing in Freeman

9

that would support requiring a hearing before SA Call, or any government expert, could testify in this case.

Even if defendant had set forth an actual challenge to SA Call's conclusions (which he did not), such an inquiry need not be made in a pretrial hearing outside the presence of the jury. Alatorre, 222 F.3d at 1102 ("Although . . . the inquiry is a preliminary one, to be made at the outset, this does not mean that it must be made in a separate, pretrial hearing, outside the presence of the jury.") (internal citations and quotations omitted). No separate hearing is needed, as defense counsel will have the opportunity to challenge the experts' qualifications and conclusions on the stand. See United States v. Fleishman, 684 F.2d 1329, 1336 (9th Cir. 1982) (overruled on other grounds by United States v. McConney, 728 F.2d 1195, 1201 (9th Cir. 1984)) (cross examination of expert's conclusions goes to weight not admissibility).

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion in limine.