| Case No. | 2:13-cr-00484-CAS – 1, 3, 5, 6 & 10 | Date | April 19, 2019 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Not Present | J. Mark Childs, Not Present<br>Christopher Kendall, Not Present<br>Michael Freedman, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter /<br>Recorder, Tape No.* | *Assistant U.S. Attorneys* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond. | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Jose Rodriguez-Landa | NOT | X | | Carlo Spiga | NOT | | X |
| Fred Anthony Montoya | NOT | X | | Carlos Iriate | NOT | X | |
| Luis Gerardo Vega | NOT | X | | Mark Windsor | NOT | X | |
| Manuel Larry Jackson | NOT | X | | Amy Jacks | NOT | X | |
| Sonia Apodaca | NOT | | X | Humberto Diaz | NOT | X | |

**Proceedings:**     (IN CHAMBERS) - DEFENDANTS' MOTION TO ADMIT EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 106, 403, 801(D)(2), 803, & 804  (Dkt. [ 1128], filed on April 14, 2019)

DEFENDANT VEGA'S SUPPLEMENTAL MOTION (Dkt. [ 1133], filed on April 15, 2019)

## I.     INTRODUCTION AND BACKGROUND

In July 2013, a grand jury indicted defendants Jose Rodriguez-Landa ("Rodriguez-Landa"), Fred Anthony Montoya ("Montoya"), Luis Gerardo Vega ("Vega"), Manuel Larry Jackson ("Jackson"), and Sonia Apodaca ("Apodaca") on one count of conspiracy with each other to: (1) possess with intent to distribute at least 50 grams of methamphetamine, or at least 500 grams of a mixture of substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii); (2) distribute at least 50 grams of methamphetamine, or at least 500 grams of a mixture of substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii); (3) possess with intent to distribute at least 100 kilograms of a mixture or substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii); and (4) distribute at least 100 kilograms of a mixture or substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii) (Count One).

Dkt. 1 ("Indictment") at 6–7.[1]  The indictment also charges several defendants with discrete drug offenses, all of which are identified as overt acts in furtherance of the conspiracy alleged in Count One, and the Indictment also seeks forfeiture pursuant to 21 U.S.C. § 853.  See generally id.  In brief, the Indictment alleges that members of La Familia Michoacán drug cartel ("La Familia" or "LFM") and the Mexican Mafia conspired to operate "the Project," an alliance through which La Familia agreed to provide drugs and money to the Mexican Mafia and, in exchange, the Mexican Mafia agreed to (1) distribute La Familia drugs through its street gang networks, (2) collect La Familia debts, and (3) provide protection to incarcerated La Familia members.

Throughout the investigation, the government employed a confidential informant ("CS-1"), who was a former member of the Mexican Mafia.  By attaching electronic monitoring devices to CS-1's person, cell phones, and vehicle, and by equipping a warehouse, which the government used in this case, with video cameras, the government recorded hundreds of hours of conversations between CS-1 and the defendants.

On April 14, 2019, defendants Montoya, Vega, Jackson and Apodaca filed a motion, asking this Court to admit various segments of the audio recordings captured during this investigation into evidence.  Dkt. 1128 ("Joint Mot.").  They moved for admission of the portions of the government's audio and video recordings under Federal Rules of Evidence 106, 403, 801(d)(2), 803, and 804.  See generally id.  On April 15, 2019, defendant Vega filed a supplemental motion to admit two additional audio segments.  Dkt. 1133 ("Vega Mot.").  The government opposed the first motion on April 16, 2019.  Dkt. 1135 ("Opp'n").  The government did not object to defendant's supplemental motion.

## II.   LEGAL STANDARD

Under Rule 106, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."  Fed. R. Evid. 106. [2]  Rule 106 "exists to avert 'misunderstanding or distortion' caused by introduction of only part of a document."  United States v. Vallejos, 742 F.3d 902, 905 (9th Cir. 2014) (quoting

---

[1] The indictment also named as defendants Jimmy Ruben Soto, Raymond Lozano, Claudia Garcia, Adam Rios, Omar Hugo Robles, Freddie Montes, Michael Moreno, and Efrain Isak Rosales. Six of these defendants have entered pleas; the seventh's case has been severed; the eighth is currently a fugitive.

[2]   In the instant motion, defendants move to admit evidence during the government's case-in-chief, and therefore the Court does not consider whether the common law rule of completeness would permit the admission of these recordings.

<u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153 (1988)).  The Rule "does not, however, require the introduction of any unedited writing or statement merely because an adverse party has introduced an edited version."  <u>Id.</u>; <u>see also</u> <u>United States v. Collicott</u>, 92 F.3d 973, 983 (9th Cir. 1996) ("[I]t is often perfectly proper to admit segments of prior testimony without including everything, and adverse parties are not entitled to offer additional segments just because they are there and the proponent has not offered them.") (internal quotation marks omitted).  What is admitted under the rule of completeness depends on the content itself.  <u>Vallejos</u>, 742 F.3d at 905.

The Ninth Circuit has ruled that Rule 106 "does not compel admission of otherwise inadmissible hearsay evidence."  <u>Collicott</u>, 92 F.3d at 983 (internal quotation marks omitted).  "However, the Rule of Completeness was designed to prevent the Government from offering a 'misleadingly-tailored snippet.'  The Rule of Completeness warrants admission of statements in their entirety when the Government introduces only a portion of inextricably intertwined statements."  <u>United States v. Castro-Cabrera</u>, 534 F. Supp. 2d 1156, 1160 (C.D. Cal. 2008).  Accordingly, "[w]hile the Rule of Completeness cannot be used in a general sense as an end run around the usual rules of admissibility, each analysis must be done on a case-by-case basis in order to avoid the injustice of having the meaning of a defendant's statement distorted by its lack of context."  <u>Id.</u> at 1161; <u>see</u> <u>also</u> <u>U.S.A. v. Welton</u>, No. CR 09-00153-MMM, 2009 WL 10680850, at *1 (C.D. Cal. July 17, 2009) (explaining that Federal Rule of Evidence 106 can require the admission of "inextricably intertwined" statements).

## III.    DISCUSSION

The government previously moved to preclude defendants from introducing inadmissible hearsay.  Dkt. 792 ("Aug. MIL").  Specifically, the government sought to bar defendants from introducing segments of audio or visual recordings that contain statements by defendants or their co-conspirators.  <u>Id.</u> at 5.  As the government then explained:

> The government will seek to introduce at trial a number of [audio recordings] containing defendants' and their co-conspirators' statements.  The evidence is not hearsay because the statements are party admissions, as well as co-conspirator statements, admissible under Federal Rules of Evidence 801(d)(2)(A) and (d)(2)(E).  But those recordings are inadmissible hearsay if introduced by defendants.

<u>Id.</u> at 1.  At that time, the Court reserved ruling on the government's motion, explaining that without knowledge of what segments of the audio recordings the government intended to offer at trial, as well as what portions of the audio recordings defendants would then seek to introduce and for what purpose, the Court could not determine what audio recordings would be admissible.  The Court directed the parties to identify the specific segments of the recordings that they may seek to offer.  The Court further directed defendants to specify the purpose for which those statements were offered.  Dkt. 964 at 27.

Defendants have now produced the conversations they seek to introduce during cross examination of the government's witnesses.  The government does not oppose the introduction of the two audio recordings that defendant Vega moved to admit under Federal Rule of Evidence 106.  Thus those segments may be offered.  With regard to the Joint Motion, although defendants initially moved to admit 30 segments of the recorded conversations, after meeting and conferring, the parties represented that there remained disputes over only eight portions.  The government indicated that it did not object, for the purposes of cross-examine, to the introduction of 19 exhibits.  Defendants also indicated that they no longer intend to introduce the three exhibits.  After addressing a few primary evidentiary issues, the Court will treat the remaining eight exhibits in turn.

A.      **Whether the Informant's Statements Are Admissible Under Rule 801(d)(2)(D)**

As preliminary matter, the Court finds that CS-1's statements may not be offered against the government for their truth, under Rule 801(d)(2)(D).[3]  CS-1 is a government informant.  The Ninth Circuit has not addressed whether the statements of government informants constitute as party admissions under Rule 801(d)(2)(D).[4]  Of the circuits that have reached the issue, most

---

[3]      Rule 801(d)(2)(D) provides that an out-of-court statement is admissible where "[t]he statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2)(D).

[4]      Although defendants cite a case in which the Ninth Circuit once permitted a manual issued by the federal Department of Transpiration to be introduced into evidence as a statement of a party admission, see United States v. Van Griffin, 874 F.2d 634, 638 (9th Cir. 1989), the holding in that case was limited.  As the Ninth Circuit explained, "We do not say that every publication of every branch of government of the United States can be treated as a party admission by the United States under Fed. R. Evid. 801(d)(2)(D).  In this case the government department charged with the development of rules for highway safety was the relevant and competent section of the government; its pamphlet on sobriety testing was an admissible party admission."  Id.  To date, the Ninth Circuit has not ruled on whether statements of government agents may be offered against the government as party admissions.  See United States v. Clyne, 752 F. App'x 436, 438 (9th Cir. 2018) ("We will assume, without deciding, that statements by government agents within the scope of their agency are not treated differently from those of others in a principal-agent relationship.").  Other circuits split on this issue.  Compare United States v. Arroyo, 406 F.3d 881, 888 (7th Cir. 2005) ("This Court has held that government agents are not party-opponents for purposes of Rule 801(d)(2).") with U.S. v. Warren, 42 F.3d 647, 655 (D.C. Cir. 1994) (permitting a statement in a sworn statement to be used against the government as an adoptive admission under Federal Rule of Evidence 801(d)(2)(B)); see also McCormick On Evid. § 259 (7th ed.) ("In a criminal prosecution, statements by the agent of an

have held that the statements of confidential informants do not constitute party admissions under Rule 801(d)(2)(D).  As the Third Circuit explained when it affirmed the district court's decision that Rule 801(d)(2)(D) did not permit the introduction of out-of-court statements by a confidential informant, "We do not believe that the authors of Rule 801(d)(2)(D) intended statements by informers as a general matter to fall under the rule, given their tenuous relationship with the police officers with whom they work."  Lippay v. Christos, 996 F.2d 1490, 1499 (3d Cir. 1993).[5]

The Second Circuit has adopted the Third Circuit's reasoning and has further underscored that, in considering what statements may be treated as statements by a government agent, "[t]here is good reason . . . to distinguish sworn statements submitted to a judicial officer, which the government might be said to have adopted, and those that are not submitted to a court and, consequently, not adopted, for example, statements contained in an arrest warrant . . . and an informant's remarks."  United States v. Yildiz, 355 F.3d 80, 82 (2d Cir. 2004).  Only the Sixth Circuit has permitted the statements of a government informant to constitute a party admission under Rule 801(d)(2)(D).  See United States v. Branham, 97 F.3d 835, 851 (6th Cir. 1996) (admitting the statements because the informant "conversed with [the defendant] on a regular basis in order to establish a trusting relationship" which was "within the scope of the existing agency").  In reaching its decision, the Sixth Circuit did not discuss the history of this rule, nor the policy implications.

In this case, the Court finds that admitting the statements of CS-1 under Federal Rule 801(d)(2)(D) would be improper.  CS-1's real time statements are neither part of a sworn statement, affidavit, nor even a formalized report.  The veracity of government informants is regularly challenged, and the government's use of an agent neither signifies that it has adopted an informant's statements, nor that it authorized them.  In addition, the repeated allegations that CS-1 committed violations of law suggest the informant had the type of "tenuous relationship

---

accused may generally be admitted against the accused, but statements by agents of the government are often held inadmissible against the government."); 5 Weinstein's Federal Evidence § 801.33 (2019) (explaining that, while the doctrine is evolving, courts historically declined to permit statements by government agents to be offered against the government based "on the common-law principle that no individual should be able to bind the sovereign").

[5]     In reaching this conclusion, the Third Circuit declined to adopt a "*per se* rule that an informer can never serve as an agent for a law enforcement officer for the purposes of Rule 801(d)(2)(D)" and explained that it would "apply a case-by-case analysis to determine whether the officer had a sufficiently continuous supervisory relationship with the informer to establish agency."  Lippay, 996 F.2d at 1499.  The Court is aware of no case to date in which the Court conducted that analysis and ultimately admitted an informant's out of court statement under Rule 801(d)(2)(D).

with the police officers with whom [CS-1] work[ed]," which led the Third Circuit to conclude that admitting informant statements was contrary to intention of the Rules' drafters.  Lippay, 996 F.2d at 1499.   Accordingly, CS-1's statements may not be offered for their truth under Federal Rule of Evidence 801(d)(2)(D).

## B.      Admissibility of Specific Defense Exhibits

### i.      Defense Exhibit 6003

Defendants move to admit statements in a conversation between CS-1, Freddy Montes, and Hugo Montes because they go to the Montes' state of mind regarding how the Mexican Mafia and LFM will reach an agreement after Mexican Mafia members travel to Mexico.  The government objects as it finds that these statements do not clarify the associated government exhibit, Exhibit 307.  That conversation discusses Rodriguez-Landa's leadership in the Project.

The Court disagrees with the government's position that the Rule 106 would not call for the admission of any of these statements.  Where CS-1 describes himself as the leader of the Project, the Rule of Completeness applies because those statements may qualify assertions regarding Rodriguez-Landa's alleged leadership.  As defendants argue, the statement about CS-1's leadership would be admissible for its effect on the Montes brothers—a non-hearsay purpose.  In addition, CS-1's forward-looking statements of future intent are admissible under Federal Rule of Evidence 803(3) to show that CS-1 was more likely to have acted in accordance with his present sense intention.  See Mut. Life Ins. Co. of New York v. Hillmon, 145 U.S. 285 (1895) (holding that evidence of intent to commit an act is admissible to prove commission of the act itself).  These statements may provide additional context, under Rule 106, as to CS-1 and the Montes' plans for managing the project progress.  Accordingly, the Court **GRANTS** defendants' request to offer this conversation.[6]

### ii.      Defense Exhibit 6004

Defendants move to introduce statements in which CS-1 and Montoya discuss their role in the Project.  The government objects to the admissibility of this conversation on the basis that

---

[6]      The Court also finds no basis to exclude the last statements of the conversation where CS-1 is the final speaker.  While the government contends that exhibits that end with statements by CS-1 cannot be "offered for the effect on the listener," or to illustrate another defendant's state of mind, "as the jury will never be able to hear any response to such statements," the government cites, and the Court is aware of, no legal support for this position.  Opp'n at 9–10.  To the contrary, it would seem unnatural to assume that a listener would necessarily voice the effect of another person's statements.  Accordingly, where the Court otherwise finds conversations to be admissible, and where the parties have agreed to admit certain exhibits, defendants may offer the final statements by CS-1, as well.

"defendant fails to identify how [the statement] cures a misleading impression created by [the government's exhibit] 312-1." Opp'n at 13. The Court agrees that these statements do not appear to cure a mischaracterization created by statements offered by the government's exhibit 312. In that exhibit, CS-1 and Montoya discuss the drugs they anticipate obtaining from the Montes brothers. Rule 106 permits the introduction of parts of a writing or recorded statement, during the government's case-in-chief, only in response to evidence the government introduces. Fed. R. Evid. 106. Rule 106 thus does not permit the admission of defense exhibit 6004 at this time. The Court **DENIES** defendants' request, without prejudice to defendants seeking to admit this evidence in their own case.

### iii.       Defense Exhibit 6005-4

This transcript displays one side of a telephone conversation between CS-1 and his handler, ATF Agent John Ciccone, which presents only CS-1's statements. This one-sided telephone conversation appears at the end of the audio recording when CS-1 met with Moreno on March 9, 2011. CS-1 apparently called Agent Ciccone after CS-1's meeting with Moreno. Defendants seek to introduce this conversation to demonstrate that Agent Ciccone was aware that CS-1 did not give Moreno any of the money from the Montes brothers, that CS-1 suggested that Agent Ciccone should "work on getting Montoya out of custody," which would permit Montoya to travel to Michoacán, and to communicate Moreno's preferences on the timing of the trip to Michoacán. Mot. at 13. In the Government's Exhibit 319-4a, which the contains a segment of the conversation between Moreno and CS-1, CS-1 states, "I tell you we got, we got, uh, you know, twenty-four G's to play with right there," and then proceeds to tell Moreno that they can divide the money however he would like. Per defendants, Defense Exhibit 6605-4 references that same money from the Montes.

The Court finds that Rule 106 does not permit the introduction of these statements as they are not "part" of the same recorded conversation introduced by government exhibit 324. Although these statements were physically captured on the same audio recording, they arise out of a different conversation with a different participant. The Court therefore **DENIES** defendants' request, without prejudice to defendants seeking to admit this evidence in their own case.

### iv.       Defense Exhibit 6007

Defendants seek to introduce this conversation between CS-1 and defendant Moreno, in which they discuss taking money from the Montes brothers. Defendants assert that the conversation responds to the government's exhibit 324. The government now represents that it will not be playing this exhibit, and thus calls the request moot. The Court agrees. Rule 106 permits the introduction of parts of a writing or recorded statement, during the government's case-in-chief, only in response to evidence the government introduces. Fed. R. Evid. 106.

Defendants' request is therefore **DENIED**, without prejudice to defendants seeking to admit this evidence in their own case.

### v.          Defense Exhibits 6013-1, 6013-3, & 6013-4

Defendants move to admit these conversations between CS-1, Vega, and the Montes brothers not for their truth but to illustrate the state of mind of the participants. These statements are offered in response to the government's exhibit 340, but the government now represents that it will not be introducing its exhibit 340. Opp'n at 17. Accordingly, the government calls this issue moot. Id. As discussed above, the rule of completeness therefore does not permit the introduction of these statements at this time. Defendants' request is therefore **DENIED**, without prejudice to defendants seeking to admit this evidence in their own case.

### vi.          Defense Exhibit 6017

Defendants move to admit a section of a conversation between CS-1, Vega, Freddy Montes, and an unidentified male in which CS-1 purportedly "expresses to Freddy Montes that if CS-1 and Freddy Montes didn't have a relationship . . . , CS-1 would have robbed Freddy Montes of everything and would have kidnapped Freddy Montes on top of it." Mot. at 22. Defendants argue that the statement goes to Freddy Montes' state of mind, and that it is also admissible as a statement against CS-1's interest. Id.

The government objects to the admission of these statements for any purpose on the basis of Rule 403. Id. at 19. The government further explains that, if defendants were to offer this evidence, the government would be required to put the conversation in context, namely by introducing conversations between defendant Jackson and CS-1 wherein they discuss kidnapping the Montes brothers because they were dissatisfied with the progress of the Project. Id. The government contends that playing those recordings would confuse the issues and prejudice Jackson, and for that reason, the government has declined to present that evidence. The government also argues that these statements are inadmissible hearsay without an exception. In response, defendants argue that CS-1 originated the idea to kidnap the Montes brothers before Jackson allegedly joined the project.

The Court held oral argument on this exhibit on April 18, 2019. Having considered the parties' arguments, the Court concludes that this testimony does not cure a misleading impression presented in the government's exhibit 379. The Court further finds that, while these alleged threats are relevant to defendants' motion for outrageous government conduct, these conversations appear to be irrelevant to the crimes charged. Moreover, presenting this evidence would require a mini-trial on issues that are not relevant to this case. The Court therefore **DENIES** defendants' request, without prejudice to defendants seeking to admit this evidence in their own case.

## IV. CONCLUSION

In accordance with the foregoing, defendant's motion in limine is **GRANTED** in part and **DENIED** in part, without prejudice to a showing that these statements may be otherwise relevant and admissible during the defendant's case. Defendant Vega's supplemental motion is **GRANTED**.


     IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |